UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:23-60-REW

UNITED STATES OF AMERICA                                                  PLAINTIFF

V.          **SENTENCING MEMORANDUM OF THE UNITED STATES**

JESSE E. KIPF                                                              DEFENDANT

* * * * *

The Defendant is a serial hacker, stealing personal identifying information and infiltrating protected computer networks of businesses and governmental entities with abandon. He caused significant damage, both monetarily and in the form of technological responses, to his corporate and governmental victims. By attempting to kill himself off to avoid child support obligations, the Defendant continues to re-victimize his daughter and her mother, who are owed more than $116,000 in child support obligations. In advance of sentencing in this matter, the United States sets forth below its position on the appropriate sentence. Balancing the seriousness of the offense and other factors in 18 U.S.C. § 3553(a), the government recommends a sentence of 60 months as to Count Two, to be served consecutively with a sentence of 24 months as to Count Seven, for a total term of 84 months. This sentence meets the objectives of 18 U.S.C. § 3553(a) in fashioning a sentence that is adequate, but not greater than necessary, as required by law.

I.        **The Applicable Advisory Guidelines Range**

The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by

correctly calculating the applicable Guidelines Range." *United States v. King*, 553 F. App'x 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The Presentence Investigative Report ("PSR") correctly calculated a total base offense level of six, which is increased by ten (10)-levels for a loss amount exceeding $150,000. *See* U.S.S.G. §§ 2B1.1(a)(2); 2B1.1(b)(1)(F). [PSR at ¶¶ 31, 32.] The PSR also properly increased the offense level by two (2) points, because the offense involved 10 or more victims; two (2) points because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; two (2) points because the offense involved trafficking in unauthorized access devices; and two (2) points because the offense involved unauthorized public dissemination of personal information. *See* U.S.S.G. § 2B1.1(b)(2)(A)(i), (b)(10)(C), (b)(11)(B)(i), (b)(18)(B). [*Id.* at ¶¶ 33-36.] Finally, the PSR properly awarded KIPF with a three (3)-point reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). [*Id.* at ¶ 43.] With the PSR's total offense level of twenty-one (21) and a criminal history falling in Category IV, KIPF's properly calculated, advisory Guidelines range is 57 to 71 months' imprisonment as to Count Two. [*Id.* at ¶ 79.] Because the statutory maximum penalty as to Count Two is five years, his adjusted Guidelines range is 57-60 months. [*Id.*]

As to Count Seven of the Indictment, the Guidelines sentence is the minimum term of imprisonment required by statute, which is 24 months' incarceration, consecutive to the term of imprisonment levied for Count Two. [*Id.* at ¶ 78.]

**II.    A Guideline Sentence is Appropriate Under 18 U.S.C. § 3553(a)**

While the advisory Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis, *Bolds*, 511 F.3d 579-80, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense,

the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, and the need to avoid unwarranted sentencing disparities between similarly situated defendants. *See* 18 U.S.C. § 3553(a)(1)-(3), (6). When fashioning the appropriate sentence, the Court endeavors to find a punishment that is "sufficient, but not greater than necessary" to address these considerations. 18 U.S.C. § 3553(a).

In achieving this task, district courts consider the Sentencing Guidelines *together* with the statutory factors set forth in § 3553(a). *See United States v. Booker*, 543 U.S. 220, 246 (2005). This is because the Guidelines "reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). The Guidelines therefore "seek to embody the § 3553(a) considerations, both in principal and in practice." *United States v. Haj-Hamed*, 549 F.3d 1020, 1027 (6th Cir. 2008) (*quoting Rita*, 552 U.S. at 350).

Turning first to the nature and circumstances of the offense, the Defendant's online exploits displayed an unusual breadth, recklessness, and disregard for victims. The Defendant identified vulnerabilities in state Death Registry Systems, including those for Hawaii, and logged into legitimate accounts on those systems using personally identifying information he stole from real, practicing physicians, in order to abuse the accounts to create fake death certificates for himself. [PSR at ¶¶ 9-14.] He then posted for sale on darknet forums instructions for how to access these same Death Registry Systems, attempting to profit from the dissemination of this harmful information. He also infiltrated private business networks and acknowledged selling access to at least one corporate victim's private databases to Russians. [PSR at ¶ 16, 20.] The damage this caused to the state Death Registry Systems was multifaceted, including nearly $80,000 in costs to

repair and untold consequences in trying to rectify the networks and the harm to the individuals whose personally identifying information was exposed, stolen, or misused.

To that end, the Defendant "acknowledged having databases of personal identifiable information on his electronic devices, including social security numbers, birth dates, and medical records," which he sold "to international buyers, including individuals from Algeria, Russia, and Ukraine." [PSR at ¶ 16.] To traffic so flippantly in the personal identifying information of a "database" worth of real people demonstrates utter disregard for everyday people he is exploiting.

The criminality of the Defendant extended beyond this greed and disrespect for society, when the Defendant orchestrated his own fake death, in order to avoid child support obligations. Investigators found KIPF's research on his laptops, where he searched for topics such as, "California child support arrears father died, " and "Remove California child support for deceased." [PSR at ¶ 19.] Obviously satisfied that his death would eliminate his child support obligations, the Defendant went so far as to obtain a social security number not issued by the Social Security Administration, to use after the government registered his death as to his real social security number. [PSR at ¶¶ 16, 19.]

Turning next to his history and characteristics, KIPF's criminal history is concerning. Beginning at the age of 21, the U.S. Army charged the Defendant for larceny of private property and wrongful damage of government property, for which he received a nonjudicial punishment within the military. [PSR at ¶ 50.] At the age of 25, law enforcement in Texas charged the Defendant for fraudulent use/possession of identifying information for which he received a deferred adjudication after a guilty plea. [*Id.* at ¶ 51.] The government moved to revoke this deferred adjudication in 2010, for crimes committed in Nebraska, but the defendant was discharged from probation for lack of due diligence of the state. [*Id.*]

The Nebraska charges included criminal possession of four or more financial transaction devices in September of 2010, for which he was found guilty and sentenced to three to five years (ordered to serve at least 18 months), and assault by a confined person in December of 2010, for which he was found guilty and sentenced to one to two years, consecutive to the September of 2010 conviction. [PSR at ¶¶ 52-53.] The Nebraska Department of Corrections reported several disciplinary infractions in addition to the assault for which he was charged, during his stint in prison. [*Id.*] At the age of 30, the Defendant was convicted of driving while intoxicated in Corydon, Indiana, and received a suspended sentence, which was revoked when he failed to complete his alcohol/drug program. [*Id.* at ¶ 54.]

KIPF also has pending charges against him in Pulaski County, stemming from his theft of credit card numbers to use to pay for food delivery apps, such as Door Dash. [*Id.* at ¶ 59.] These pending charges highlight KIPF's decision to avoid ever obtaining legitimate employment, and instead to apply his ample technical knowledge towards making a living by stealing from others. When arrested on the Pulaski County charges, KIPF admitted "he had not held legitimate employment for the last five years and that he was selling identities for income." [*Id.* at ¶ 16.] He confirmed this in his interview with U.S. Probation. [*Id.* at ¶ 71.] To his credit, the Defendant is a decorated member of the U.S. Army, but his military record is also marred with misconduct, including periods of being AWOL and violating military other rules. [*Id.* at ¶ 68-70.]

KIPF's personal history displays a classic recidivist profile, perhaps stemming from his mental health issues and substance abuse history. Nevertheless, military discipline and judicial punishment at the state and local level has not served its intended purposes throughout his life, as he continues to engage in criminal conduct in an increasingly harmful way. A Guidelines sentence

balances the nature and circumstances of the offense with the history and characteristics of the Defendant, as well as promotes specific deterrence as to this Defendant.

A strong sentence on these convictions will also reflect the seriousness of the offense, promote respect for the law, and protect the public. Perhaps equally as important is the deterrent effect of incarceration to all similarly situated individuals armed with cyber skills comparable to the Defendant. Operating criminal enterprises online generates a distance between the perpetrator and the victims, so much so that taking advantage of members of others can feel as illusory as playing a video game. This detachment breeds a lack of sympathy, which encourages hackers to continue to engage in criminal behavior. Similarly situated individuals must see the real danger they present to victims and be deterred from engaging in online criminal conduct by the fear of punishment. The cloak of anonymity afforded by the dark web is too alluring without the persistent threat of being brought to justice and serving a significant sentence.

## Conclusion

The offense level is correctly calculated in the PSR. Based on the factors mentioned above, this Court should sentence KIPF to a term of 60 months on Count Two and a consecutive term of 24 months on Count Seven, for a total of 84 months' incarceration.

    Respectfully submitted,

    CARLTON S. SHIER, IV
    UNITED STATES ATTORNEY

By:   /s/ Kathryn M. Dieruf
    Kathryn M. Dieruf
    Assistant United States Attorney
    260 W. Vine Street, Suite 300
    Lexington, Kentucky 40507-1612

(859) 685-4885  
Kathryn.Dieruf@usdoj.gov

CERTIFICATE OF SERVICE

On August 12, 2024, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record:

    Thomas Paul Miceli  
    *Attorney for Jesse Kipf*

s/ Kathryn M. Dieruf  
Assistant United States Attorney